(84 South. 889)

Ex parte WARSHAM. (7 Div. 28.)

(Supreme Court of Alabama. Dec. 18, 1919.)

1. HOMICIDE ⬤═➤169(9)—COMPLAINTS OF CITIZENS, INDUCING DEFENDANT POLICE OFFICER TO ENTER BUILDING, WHERE HE KILLED DECEASED, ADMISSIBLE.

In a prosecution against a police officer, who entered a woman's house, where he found drunken soldiers, and killed one in attempting to make an arrest, testimony that citizens living in locality complained to the officer of the disorder in the house, and that as a result of their complaint he visited the premises, is admissible; the state's theory being that the officer went to premises for a personal motive, and, under guise of arresting deceased, assaulted 'and killed him.

2. HOMICIDE ⬤═➤339—EXCLUSION OF EVIDENCE HELD PREJUDICIAL.

Where it was the state's theory that defendant police officer for a personal motive visited a woman's house, and there, under guise of arresting, shot and killed, deceased, exclusion of testimony that citizens in neighborhood had complained of disorder in the house, and as a result that defendant went to premises, was prejudicial.

3. HOMICIDE ⬤═➤180—WHETHER DECEASED WAS DRUNK OR SOBER HELD ADMISSIBLE.

Where defendant, a police officer,· who entered a woman's house and shot deceased, asserted that he found deceased drunk and disorderly, and that he resisted arrest, etc., testimony of persons living in vicinity, who complained of disorder on premises, as to whether deceased and his companions appeared to be drunk or sober, and whether they were staggering, admissible.

4. HOMICIDE ⬤═➤184—THAT PLACE WHERE ACCUSED ATTEMPTED TO ARREST DECEASED WAS A DISORDERLY RESORT ADMISSIBLE.

Where, on complaint of citizens of disorder in premises, defendant, a police officer, visited a house, where he shot and killed deceased in attempting to make an arrest, etc., evidence that the place was a disorderly house is admissible,· together with proof that defendant knew the general reputation, for in such cases he might well be entitled to more latitude in making arrests.

5. HOMICIDE ⬤═➤105, 298—RULE OF SELF-DEFENSE NOT APPLICABLE TO FORCE USED BY OFFICER IN MAKING ARREST.

An officer, in making a lawful arrest, need not retreat before resistance, but may become the aggressor, and use any necessary force, hence the rules governing the conduct of an officer in making an arrest are different from the rules applicable to self-defense, and where an officer claimed that defendant, on being arrested, resisted him and attempted to draw a deadly weapon, whereupon he killed deceased, the jury should be instructed as to right of officer to use force.

Certiorari to Court of Appeals.

Original petition by Walter Warsham for a writ of certiorari to the Court of Appeals. Writ granted, and judgment of the Court of Appeals, affirming a conviction of murder in the second degree in case of Warsham v. State, 84 South. 885, reversed and remanded.

P. E. Culli, J. S. Franklin, and L. B. Rainey, all of Gadsden, for appellant.

J. Q. Smith, Atty. Gen., and Richard Evans, Asst. Atty. Gen., for the State.

GARDNER, J. Walter Warsham, a police officer of the town of Alabama City, was convicted of murder in the second degree for the killing of one Holmes, and was sentenced to imprisonment in the penitentiary for a period of 12 years. The judgment of conviction

---

was affirmed by the Court of Appeals (84 South. 885), and the defendant files this petition for certiorari to review the decision of said court.

The shooting occurred at the home of Mrs. Annie Powell, who lived on White street, in Alabama City, and resulted from the effort of the defendant as a police officer to arrest the deceased without a warrant. There was evidence on the part of the state tending to show that the defendant, in company with one Harris, another policeman of said town, went to the home of Mrs. Powell without good excuse therefor—for a personal motive —and under the guise of arresting the deceased, who was guilty of no offense, assaulted and shot him, without justification or excuse. The evidence for the state further tended to show that Mrs. Powell was not at home, but was on the street—a short distance therefrom—and met the defendant and his companion, requesting that they do not go to her house.

The defendant's evidence tended to show that he went to the home of Mrs. Powell to investigate a complaint made by two citizens, neighbors of Mrs. Powell, as to the conduct of deceased and his companion, another soldier; that upon reaching the home of Mrs. Powell, and while yet on the sidewalk, they heard loud cursing and boisterous conduct within the house by the deceased; that thereupon they went into the house, and defendant attempted to arrest the deceased, who was very drunk and offered violent resistance thereto, and also assaulted the defendant; that the defendant fired one shot at the deceased, as he (deceased) drew his hand to his hip pocket with a threat of killing defendant. This one shot resulting in the death of deceased.

It thus appears from the foregoing brief statement that the jury could infer from the evidence offered by the state that the defendant, for personal reasons and without any excuse whatever, went to the home of Mrs. Powell, and there assaulted and murdered the deceased, and was therefore a trespasser upon the premises and the aggressor in the difficulty. The defendant did not know the deceased, and to his knowledge had never seen him before.

[1, 2] To rebut the tendency of the evidence for the state, above mentioned, and to explain his presence at Mrs. Powell's house (her request to the contrary notwithstanding), the defendant offered to show that two citizens living in that neighborhood, viz. Messrs. Scarborough and Parrish, came to him while he was on duty as a police officer of Alabama City, informing him that there were drunken soldiers at Mrs. Powell's house, and had been there the entire afternoon, and had been guilty of conduct objectionable to their wives, who were afraid to stay at home while they (Scarborough and Parrish) went to their work, and that they wanted him to go there and make an investigation. Scarborough and Parrish were placed upon the stand by the defendant, and this testimony was sought to be elicited from them; but the objection of the state was sustained thereto.

This was error, which, in our opinion, should work a reversal of the cause. To rebut the inference the jury was authorized to draw from the evidence offered by the state, the defendant had the right to show that he had only come to Mrs. Powell's house after complaint had been made by these two citizens, who lived near by, that the deceased and his companion were drunk and were guilty of objectionable conduct. Such evidence would tend to explain defendant's presence, and that his motive was not a wrongful one, as contended by the state. That it was prejudicial is quite clear; and, indeed, is further demonstrated by the cross-examination of defendant by the state, wherein he was asked whether or not it was a fact that he was going into this woman's house over her objection, and without a warrant or writ of arrest, to all of which the defendant was forced to answer in the affirmative, and thus appear as a trespasser and intruder. A situation very similar to that here involved was considered by this court in the recent case of Gibson v. State, 193 Ala. 12, 69 South. 533, and a like conclusion reached. We need not here review the cases there cited, nor enter into any detailed discussion of the question, as we think the decision in that case conclusive here as to a reversal of the cause.

[3] The defendant asked the witness Scarborough, who had observed the deceased and his companion, whether they appeared to be drunk or sober, and whether or not they were staggering. The objections of the state to these questions were sustained. This was error also. The defendant in his testimony insisted that the deceased was what he termed "crazy drunk," and had been guilty in his presence of an offense of disorderly conduct, justifying his arrest without a warrant. The conduct of the deceased, as to his sobriety, was a very material question in the case, and the state having been permitted to prove that the deceased was sober, it is quite clear that the defendant's evidence to the contrary should have been received.

[4] The defendant also offered to show that the place where the deceased and his companion were was a house of "ill fame," and to that end asked the witness Scarborough whether or not he had seen different men "from Gadsden and Alabama City, and around generally," at this house both night and day. Objection by the state was sustained. We are of the opinion that this evidence upon another trial should be admitted, coupled, of course, with further proof that

the defendant had knowledge of the general reputation of the place. In Hayes v. Mitchell, 69 Ala. 452, it was said:

"Possibly in cities and large towns there is need of greater license in the matter of making arrests, and of detention, without warrant; but it culminates at last in the inquiry: What is reasonably demanded, to guard and protect the public peace? The time of the day or night, the surrounding circumstances, the peaceful or riotous conduct of the public, the necessity, real or apparent, that the arresting officer shall be on the alert to prevent other acts of violence or lawless disturbance, * * * all these enter into the inquiry: What is the duty of the arresting officer?"

As a part, therefore, of the surrounding circumstances, the defendant should be permitted to show upon another trial, not only the complaint that was made to him by the citizens, but also his knowledge of the reputation of the house at which the deceased and his companion were, and thus aid the jury in determining whether or not, in responding and going to the Powell house, the defendant acted within the legitimate scope of his authority, and did only what was reasonably demanded of him as a conservator of the public peace. See, also, Hayes v. Mitchell, 80 Ala. 183.

[5] The refused charges are quite numerous, and, as the cause must be reversed, we do not deem it necessary to enter into a consideration of them at this time. It is not improper, however, to state that it appears from some of these charges that the defendant sought to interpose the defense of justified homicide, not only upon the theory that he acted in self-defense, but upon the further theory of having authority as an officer to make the arrest for an offense committed in his presence, and being forcibly resisted in so doing he had the right to repel force with force, and need not retreat or give back, under the doctrine announced in Birt v. State, 156 Ala. 29, 46 South. 858, and Clements v. State, 50 Ala. 117. As to that particular defense the inquiry for the jury was whether or not the shooting of the deceased was the employment of unnecessary or excessive violence in repelling the assault and in effecting the arrest, and the doctrine of self-defense as to this theory has no application. As said by this court in Birt v. State, supra:

"The doctrine of self-defense has no application to such cases, because it is the duty of the officer to effect the arrest or imprisonment of the offender, without the use of unnecessary or improper violence. * * * This duty could not be performed if any element of self-defense was essential to the protection of the officer. He must, to do his duty, become the aggressor, and in no event is he required to retreat before an assailing prisoner."

The jury does not appear to have been instructed with any particularity as to this theory, and we have thought it not improper merely to direct attention thereto in view of another trial.

The conclusion we have reached is not in accord with that of the Court of Appeals, and we are of the opinion that, for the error first above mentioned, the judgment of affirmance should be reversed. The cause is therefore reversed and remanded to the Court of Appeals for further proceedings in accordance with the views herein expressed.

Writ granted; reversed and remanded.

McCLELLAN, SAYRE, SOMERVILLE, and THOMAS, JJ., concur.